**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Debra Casanova; Jacqueline Gordon; Keith R. Lodge, Jr.; Tina M. Marston; Shirley M. Smith, <br><br> Plaintiffs, <br><br> vs. <br><br> Gale Norton, Secretary of the Interior; Bryan Bowker, Acting Western Regional Director for the Bureau of Indian Affairs, <br><br> Defendants. | No. CV 05-1273-PHX-ROS <br><br> **OPINION AND ORDER** |

Pending before the Court are Plaintiffs' Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment. For the reasons stated below, the Court will dismiss this action due to Plaintiffs' failure to exhaust their administrative remedies.

**I.     Background**

The following facts are taken from Plaintiffs' complaint. In 2004, pursuant to its constitution, the Chemehuevi Indian Tribe ("the Tribe") began issuing "assignment deeds" to members of the Tribe, purporting to convey an "exclusive right of use and possession to a parcel of the Tribe's Reservation lands for the purpose of building a home and maintaining a permanent or part-time residency on the Reservation." (Doc. 1) On April 12, 2004, the Tribe's secretary-treasurer sent the deeds to Wayne Nordwall, then Western Regional

1  Director for the Bureau of Indian Affairs ("BIA"), accompanied by a request that he approve
2  the deeds pursuant to 25 U.S.C. § 81.  (Doc.1)  On April 20, 2004, the Tribe's attorney,
3  Lester Marston, began calling the BIA to inquire about the deeds and the approval process.
4  (Doc. 1)  It appears that Mr. Marston called various different officials within the BIA over
5  the course of the next several months, attempting to obtain approval for the assignment deeds
6  that had been submitted, or at the very least find out who would be in charge of approving
7  the deeds.  (Id.)  Finally, on February 12, 2005, following numerous phone calls by Mr.
8  Marston, Mr. Nordwall left a recorded phone message for Mr. Marston indicating that the
9  BIA would not approve the assignments under 25 U.S.C. § 81.

10  On April 28, 2005, the Plaintiffs filed their complaint.  That complaint includes three
11  counts: (1) failure to approve the Tribal Plaintiffs' Assignment Deeds as encumbrances; (2)
12  failure to comply with the Administrative Procedures Act; and (3) breach of trust.  The
13  parties agreed to suspend discovery until the Court resolved a number of legal issues.
14  (Doc. 8)  On January 5, 2006, Plaintiffs filed a motion for Summary Judgment.  (Doc. 11)
15  Defendants responded to Plaintiffs' Motion for Summary Judgment, and Cross-Motioned for
16  Summary Judgment on March 08, 2006.  (Doc. 40)

17  **II.    Discussion**

18  Defendant's cross-motion for summary judgment is based on lack of subject matter
19  jurisdiction due to Plaintiff's failure to exhaust administrative remedies.  Plaintiffs do not
20  dispute their failure to exhaust their administrative remedies, rather, they argue that they are
21  not required to exhaust their remedies. (Doc. 43)  Plaintiffs offer three reasons why they are
22  not required to exhaust the administrative remedies outlined by the BIA.  (Id.)  First,
23  Plaintiffs argue that the Federal Defendants failed to act within the time periods required by
24  law.  (Id.)  Second, Plaintiffs argue that exhaustion would be futile.  (Id.)  And third,
25  Plaintiffs argue that they will suffer irreparable harm if required to exhaust their
26  administrative remedies.  (Id.)  These arguments are not persuasive.

27  **A. Exhaustion of Remedies**

28

The Administrative Procedure Act ("APA") allows for judicial review of "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  "That section means that when a statute or agency rule dictates that exhaustion of administrative remedies is required, the federal courts may not assert jurisdiction to review agency action until the administrative appeals are complete."[1]  White Mountain Apache Tribe v. Hodel, 840 F.2d 675, 677 (9th Cir. 1988).  The exhaustion principle allows the "development of a factual record, application of agency expertise, and possible resolution of the dispute without resort to federal court."  Stock West Corp. v. Lujan, 982 F.2d 1389, 1394 (9th Cir. 1993) (citations omitted).  There has been no final agency action in this case and there is a very limited factual record for the Court to review.

### B. Failure to Act Within Time Permitted

Plaintiffs' first argument in support of their claim that they should not be required to exhaust is that the exhaustion requirement does not apply because Defendants failed to act for their requests for approval within the time period required by law.  (Doc. 43 p.2)  The APA provides that a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. 706(1).  In support of this argument Plaintiffs point to the D.C. Circuit opinion of Public Citizen Health Research Group v. Commissioner, Food & Drug Administration, 740 F.2d 21, 32 (D.C. Cir. 1984).  There the court observed that "[w]hen agency recalcitrance is in the face of a clear statutory duty or is of such magnitude that it amounts to an abdication of statutory responsibility, the court has the power" to

---

[1] Exhaustion of administrative remedies may not be an issue of jurisdiction.  See Anderson v. Babbitt, 230 F.3d 1158, 1162 (9th Cir. 2000) ("A statute that merely provides that no action shall be brought . . . until such administrative remedies as are available are exhausted is not a jurisdictional bar.").  When "[e]xhaustion of administrative remedies . . . [is] not made mandatory by statute, [it] is . . . a prudential doctrine."  Santiago v. Rumsfeld, 425 F.3d 549, 554 (9th Cir. 2005).  Whether exhaustion is jurisdictional or prudential in this case, however, is immaterial because no exception applies to excuse exhaustion and dismissal of the action is the appropriate result.

- 3 -

1   compel the agency to act. <u>Id.</u> But the BIA has set up specific procedures for parties to deal
2   with official delay.

3         BIA regulations provide that a "person or persons whose interests are adversely
4   affected . . . by the failure of an official to act on a request to the official, can make the
5   official's inaction the subject of appeal." 25 C.F.R. § 2.8(a)  The regulation goes on to
6   outline the process a party must follow when faced with agency inaction. 25 C.F.R. §
7   2.8(a)(1)-(3) (instructing individual to "request in writing that the official take the action,"
8   "describe the interest," and "state that, unless the official involved either takes action on the
9   merits of the written request within 10 days . . . or established a date by which action will be
10  taken, an appeal shall be filed"). The BIA's process for appealing from agency inaction is
11  not unreasonable. Because they chose not to take advantage of that process, Plaintiffs' claim
12  that agency inaction is reason to sidestep the exhaustion requirement is unconvincing.

13  **C.  Futility**

14        Plaintiffs' second argument is that exhaustion would be futile. Exhaustion is not
15  required where administrative review is rendered "futile by virtue of a preannounced decision
16  by the final administrative decision-maker." <u>White Mountain Apache Tribe</u>, 840 F.2d at 677
17  (citing <u>Ringer v. Schweiker</u>, 684 F.2d 643, 647 (9th Cir. 1982)). Plaintiffs argue that the
18  Interior Board of Indian Appeals has made a "preannounced decision" rendering any appeal
19  futile. (Doc. 44)  The Court does not agree.

20        Plaintiffs cite <u>Mont Faulkner v. Acting Northwest Regional Director, Bureau of Indian</u>
21  <u>Affairs</u>, 39 BIA 62 (2003), and <u>Candelaria v. Sacramento Area Director, Bureau of Indian</u>
22  <u>Affairs</u>, 27 BIA 137 (1995), as support for their position that tribal land assignments are not
23  subject to BIA approval. But the issues in <u>Mont Faulkner</u> and <u>Candelaria</u> are not identical
24  to the issues presented here. Both cases involved intra-tribe disputes. <u>Mont Faulkner</u>, 39
25  BIA at 64 ("Appellant's arguments are an attempt to convert a lease cancellation into an
26  attack on a 50-year old Tribal action . . . ."); <u>Candelaria</u>, 27 BIA at 140 (observing that
27  assignment of tribal lands "is an internal matter for resolution by the Band."). There is no
28  intra-tribal dispute in this case and it does not appear that resort to administrative remedies

will *necessarily* be futile.  There has not been a preannounced decision that excuses Plaintiffs' failure to exhaust.

### D. Irreparable Harm

Plaintiffs' third argument is that they will suffer irreparable harm if they are required to exhaust their administrative remedies.  Irreparable harm can be an exception to the requirement of administrative exhaustion.  See Milena Ship Management Co. Ltd. v. Newcomb, 804 F.Supp. 846, 850 (E.D. La. 1992); Board of Trustees of Const. Laborers' Pension Trust for Southern California v. M.M. Sundt Const. Co., 37 F.3d 1419, 1421 (9th Cir. 1994) ("Exceptions to exhaustion requirements are usually limited, and apply only in extraordinary circumstances, such as, when the arbitral process would be futile or would cause the plaintiff irreparable injury.").  The passage of time alone, however, is insufficient to constitute irreparable harm.  See Bakersfield City School Dist. of Kern County v. Boyer, 610 F.2d 621, 626 (9th Cir. 1979).

Plaintiffs have failed to show that irreparable harm will occur as a result of being directed to exhaust their administrative remedies.  Plaintiffs contend the harm being experienced consists of living in "substandard housing, lacking adequate electrical wiring, plumbing, insulation, heat, cooling, and a potable supply of water." (Doc. 43 p.8)  While these living conditions are unfortunate, they are not sufficient to establish irreparable harm. Had Plaintiffs complied with the relevant administrative grievance procedures, their living conditions may have been rectified long ago. Plaintiffs chose not to follow the administrative appeals process, choosing instead to phone Defendants at various times to inquire regarding the approvals of the assignments.  Plaintiffs filed this suit on April 29, 2005, almost 12 months *after* they could have begun the administrative appeals process of the agency inaction. The law does not allow Plaintiffs to delay the administrative appeals process of the agency's inaction by 12 months and then claim that irreparable harm is occurring and will continue to occur if they are forced to go through the appropriate process.

### E. Mandatory Duty

- 5 -

Finally, Plaintiffs argue that the BIA had a mandatory duty to approve the deeds. (Doc. 43 p.8)  But Plaintiffs do not cite to authority establishing that such a duty would excuse their failure to exhaust their administrative remedies.  In fact, it is appropriate for the Court to defer to the BIA to make this determination in the first instance based on the agency's expertise.  A Court will be in a better position to evaluate the merit of this argument after the BIA has made a final determination.

**F.  Stay**

Anticipating the possibility that they would be directed to exhaust their administrative remedies, the Plaintiffs ask that the Court "stay this case, and remand the case to the secretary." (Doc. 50 p.7)  No statute of limitations issue will arise due to the dismissal of the case and having evaluated the relevant circumstances, the Court determines a stay would not be appropriate.  See Morrison-Knudsen Co., Inc. v. CHG International, Inc., 811 F.2d 1209, 1223 (9th Cir. 1987) (stating Court must weigh certain factors when evaluating request for stay and a stay is especially appropriate when a statute of limitations issue will arise).

Accordingly,

**IT IS ORDERED** all pending motions are **DENIED AS MOOT** and this case is **DISMISSED WITHOUT PREJUDICE** based on Plaintiff's failure to exhaust their administrative remedies.

DATED this 18th day of September, 2006.

Roslyn O. Silver
United States District Judge